DICKINSON, Justice,
Dissenting.
¶ 25. There is no dispute in this case that the trial court found the defense sustained its burden under Batson v. Kentucky[12] of making a prima facie showing that the State struck an African-American juror, Chauncey Thompson, because of his race. At that point, the burden shifted to the State to rebut the prima facie showing of discrimination by offering a race-neutral reason for striking Thompson. Because the State failed to establish a race-neutral reason, I cannot join the majority, and I respectfully dissent.
I.
¶ 26. Two prosecutors were present on the morning of voir dire. Prosecutor Jones stated that the race-neutral reason for striking Thompson was that he had a “marijuana conviction.” The trial judge asked Prosecutor Jones how the information had been verified, and Jones responded, “through the Pascagoula City Court.” Defense counsel questioned the truth of the alleged race-neutral reason, and Prosecutor Lawrence stated, “We just called, your Honor. That’s how we got it, over the telephone.” Still dissatisfied with the State’s assertion that Thompson had been convicted of a crime, defense counsel requested “thirty minutes to do a little investigating ... on these Batson challenges.” Jones objected to the delay, stating that “any investigation can be done after we finish the trial.” The trial judge denied the request, and allowed the State to exclude Thompson as a juror.
¶ 27. After his client was convicted, defense counsel took Jones up on his invitation to investigate the matter after trial. In doing so, he discovered not only that Thompson had not been convicted of a crime, but also that the city court clerk had so informed the State’s investigator on the morning of trial. The city court clerk signed an affidavit to that effect. Armed with this information (which many would justifiably view as a smoking gun), Shad-dock filed a post-trial motion for a new trial.
¶28. At the post-trial hearing, Shad-dock provided the following argument:
The next affidavit ... is by the City Court Clerk, and it deals with a gentleman named Chauncey D. Thompson, who was Number 14 on the jury. If you recall, the State said their race-neutral reason was, this guy had been convicted, or charged with possession of marijuana in the City Court. And that wasn’t quite the truth. And this affidavit so bears that out. It says that on the morning of the trial, May 17, 2004, Scott Mcllrath calls the City Court Clerk. The only person she [sic] asked about is this Black male. She advises him he had been charged with four misdemeanors and they had all been dismissed, they had the wrong person.
¶ 29. Thus, we have the City Court Clerk’s sworn affidavit that the prosecutor’s representation to the trial court on the morning of voir dire was not true. One would think the trial court would have demanded an explanation or, at the very least, the prosecutor would have demanded an opportunity to clear the record and explain what happened. In fact, what happened was nothing. The prosecutor’s response to the discrepancy was:
*368 He [the investigator] called up there ... [ellipsis in original] And the affidavit confirms that the information was given to him that this man had been charged with four offenses. Now, whether those offenses had been dismissed, we didn’t have at that time. He got the first information. So, Mr. Shaddock is providing this other information. The information the State got from Mr. Mcll-rath’s calling the police department was read into the record, so Your Honor will be able to clearly see exactly what the State knew at that time ...
This response provides no information. But even if the trial court took the prosecutor’s explanation to mean that the city court clerk was not telling the truth in her affidavit, the court’s later ruling is not consistent with such a finding. In upholding the State’s peremptory strike of Thompson, the trial court stated that “the substance of the reasons offered by the State of Mississippi at the time the challenge was made ... the substance of those rulings I find to be substantiated by the affidavits and exhibits that have been introduced here.”
¶30. In other words, the trial court seemed to be of the opinion that the city court clerk’s affidavit substantiated what the prosecutors had said on the morning of voir dire. Nothing could be further from the truth. The affidavit directly, unequivocally, and unquestionably contradicted the prosecutors’ representations to the trial court.
¶ 31. It is not my purpose to determine whether the prosecutors’ misrepresentations were honest mistakes on the part of the city court clerk, the investigator, or one of the prosecutors. My guess is there was a miscommunication. Who knows? But my guesswork cannot substitute for my obligation to apply the law.
II.
¶ 32. The theory and logic supporting the United States Supreme Court’s ruling in Batson is fairly simple. But applying Batson and its progeny to real-life cases has perplexed trial and appellate judges for two decades, and continues to do so today. The black-letter law of Batson was recently restated as follows:
Batson provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race: “First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination.”
Snyder v. Louisiana, — U.S. -, -, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175, 180-181 (2008) (citations omitted).
¶ 33. Although volumes of litigation and appellate discussion have addressed what is necessary to satisfy the first step, that is, “a prima facie showing that a peremptory challenge has been exercised on the basis of race,” we do not need to go there today because the trial judge found the defendant had established a prima facie case, and the State does not challenge that finding.
¶ 34. Given that the defendant made a prima facie showing of racial discrimination, the prosecutor was required to satisfy the second step, that is, “the prosecution must offer a race-neutral basis for striking” the juror. This the prosecutor did not do. Thus, because the State never satisfied Batson’s second step, the inquiry should end. Instead, the majority goes on to the third step and grants the trial judge the discretion to conclude that, even *369 though the State had no legitimate race-neutral reason for striking Thompson, the prosecutor had no intent to discriminate. Because I do not believe Batson provides the trial judge, or us, that discretion, I respectfully dissent.
WALLER AND DIAZ, P.JJ., JOIN THIS OPINION. GRAVES, J., JOINS THIS OPINION IN PART.

. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).